# SUPREME JUDICIAL COURT

###### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1867, AT LENOX.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN,
Hon. HORACE GRAY, Jr., ⎬ Justices.
Hon. DWIGHT FOSTER,

## John Z. Goodrich vs. Samuel Hooper.

In an action of tort for slander, the declaration alleged that in conversations concerning the plaintiff and his acts as collector of customs in reference to the settlement of a claim in behalf of the United States against W., the defendant used these words: " G. (the plaintiff) had not accounted to the department for the sum paid by W. by some thirty-two thousand dollars; " and also words substantially as follows: " That in the settlement for the alleged frauds by W., amounting to many hundreds of thousands of dollars, the amount paid by them was one hundred and fifty-seven thousand two hundred and twenty four dollars; that only one hundred and twenty five thousand two hundred and twenty-four dollars was accounted for;" " that it was not known what had been done with the balance," " and it was understood that this settlement was made through the intervention of S. and his partner, the late deputy-collector; that it was discreditable to the government to have it generally known that the sum of one hundred and fifty-seven thousand two hundred and twenty-four dollars was paid by W. in a settlement with the government, and that thirty-two thousand dollars of that sum was not accounted for." *Held*, on demurrer, that these words do not, by their natural sense and meaning, impute to the plaintiff any criminal offence, and are not actionable, although the plaintiff by innuendoes avers that they impute to himself the crimes of embezzlement and of receiving a bribe, and were so understood in the conversations alleged.

TORT for slander. The declaration contained four counts The first count alleged that in August 1865 the plaintiff was, and for the four years previous thereto had been, collector of customs for the district of Boston and Charlestown; that it was his official duty to account for and pay to the United States all moneys belonging to the United States received by him officially, and that neglect or refusal so to account and pay constitutes the crime of embezzlement under the laws of the United States that during this period he was the only officer and person in the district authorized to make settlement in behalf of the United States of claims for moneys due on account of any importations of merchandise made within it, and was also the only officer and person authorized by law to receive and receipt for, in behalf of the United States, any sums paid in settlement of any such claims; that, previous to the speaking of the alleged slanderous words, a claim had been made in behalf of the United States against J. D. & M. Williams, an importing firm doing business in Boston, for a large sum alleged to be due from them to the United States on account of certain importations of wine, and the plaintiff, acting in his capacity of collector, in behalf of and under the authority of the government of the United States, had settled it, and had received from J. D. & M. Williams, in settlement and payment thereof, in all the sum of one hundred and twenty-five thousand two hundred and twenty-four dollars, and no more; and that the defendant, in a conversation concerning the plaintiff and his acts in reference to this settlement, publicly, falsely and maliciously accused him of the crime of embezzlement, by words spoken of him substantially as follows : " Goodrich," meaning the plaintiff, " had not accounted to the department," meaning the treasury department of the United States, " for the amount paid by the Messrs. Williams by some thirty-two thousand dollars," meaning and intending thereby, and being so understood, that the plaintiff had not accounted to the United States for all the money which he had received from the Messrs. Williams in the settlement of the claim against them, but had received the additional sum of about thirty-two thousand dollars which he had fraudulently concealed and appropriated to

Goodrich *v.* Hooper.

his own use. The second count alleged that the defendant " publicly, falsely, and maliciously accused the plaintiff of the crime of embezzlement and felony under the laws of the United States," by words spoken of him in reference to his same settlement with J. D. & M. Williams, substantially as follows : " that in the settlement for the alleged frauds by Messrs. J. D. & M. Williams, amounting to many hundreds of thousands of dollars, the amount paid by them was one hundred and fifty-seven thousand two hundred and twenty-four dollars; that only one hundred and twenty-five thousand two hundred and twenty-four dollars was accounted for, of which sixty-two thousand six hundred and twelve dollars was credited to the government, leaving the same amount (sixty-two thousand six hundred and twelve dollars) divided between the collector, the naval officer and the surveyor ; that it was not known what had been done with the balance, amounting to the large sum of thirty-two thousand dollars, and it was understood that this settlement was made through the intervention of Mr. Samuel A. Way and his partner, the late deputy collector ; that it was discreditable to the government to have it generally known that the sum of one hundred and fifty-seven thousand two hundred and twenty-four dollars was paid by Messrs. Williams & Co. in a settlement with the government, and that thirty-two thousand dollars of that sum was not accounted for," meaning and intending thereby and being so understood, that the plaintiff, as collector aforesaid, representing the United States, and as the only person who could make a settlement in their behalf with Messrs. J. D. & M. Williams, did settle the claim with them and did receive from them, in behalf of said government, the sum of one hundred and fifty-seven thousand two hundred and twenty-four dollars, but that he had accounted to the government for only the sum of one hundred and twenty-five thousand two hundred and twenty-four dollars, and had fraudulently and corruptly failed and neglected to account for the balance of thirty-two thousand dollars which had been paid by the Messrs. Williams to him in the settlement. There was no averment in these counts of the time of uttering the alleged slanderous words, other than as above recited.

The third and fourth counts contained like averments of the capacity and term of service of the plaintiff as collector of customs, and of the existence of the claims against J. D. & M. Williams; and they averred that " the matter of said claims was brought and was pending before the plaintiff, in his official capacity, for examination and settlement; " that he settled it in manner as before described, and received from them in settlement, in all, the sum of one hundred and twenty-five thousand two hundred and twenty-four dollars, and duly accounted to the United States for all that sum; that " any officer of the United States who accepts or receives any money, goods, bribe, present or reward which shall be offered to him with intent to influence his vote or decision on any question or matter which may be then pending or which may be brought before him in his official capacity, is guilty of a high crime and misdemeanor; " and that the defendant " publicly, falsely and maliciously accused the plaintiff of the crime of accepting a bribe offered to him to influence his official decision and conduct in the matter aforesaid," by speaking of him, on or about August 1, 1865, the words set forth in the first and second counts respectively, " meaning and intending thereby, and being so understood to mean, that the said Messrs. Williams had paid to the plaintiff, in addition to the sum of one hundred and twenty-five thousand two hundred and twenty-four dollars, which was duly accounted for to the government by the plaintiff, the further sum of thirty-two thousand dollars, or a part of said sum of thirty-two thousand dollars, with the purpose and intent to influence the decision and action of the plaintiff in his official capacity aforesaid, in the matter of the investigation and settlement of said claims which had been brought and been pending before him as aforesaid, and that he had unlawfully and corruptly accepted said sum or some part thereof."

The defendant demurred to this declaration as insufficient in law to support the action, and for causes of demurrer set up that the alleged slanderous words do not, by their natural import, nor in connection with any facts or explanations stated in the declaration, in any manner charge or impute the crime of em-

bezzlement or the crime of accepting a bribe, and are not in themselves actionable.

At May term 1867 of this court the case was reserved by the chief justice for determination by the full court upon the question of law raised by the demurrer.

*H. L. Dawes & T. K. Lothrop,* for the defendant.

*E. Merwin,* for the plaintiff.

FOSTER, J. Each of the counts in this declaration alleges that the defendant has orally slandered the plaintiff by accusing him of a criminal offence. It is not a suit for a libel, nor for words spoken which are claimed to be slanderous in consequence of the occupation or office of the plaintiff, and the action can be maintained only upon the ground that the words set forth amount to an accusation of a punishable offence.

The demurrer asks the judgment of the court whether the language alleged to have been used, in connection with the circumstances under which it was uttered, is fairly susceptible of such a construction. The principles upon which this issue of law must be determined are familiar, and have been established by very numerous decisions. It must appear upon the record that the words set forth, by their natural signification, when interpreted in the light of the extrinsic facts alleged, are fairly capable of such a meaning. If they are not, their meaning cannot be enlarged by the innuendoes, and the declaration will be adjudged bad on demurrer. Under our present system of pleading, no innuendoes are necessary, but " if the natural import of the words is not intelligible without further explanation or reference to facts understood but not mentioned, or parts of the conversation not stated . . . . the declaration should contain a concise and clear statement of such things as are necessary to make the words relied on intelligible to the court and jury in the same sense in which they were spoken." Gen. Sts. *c.* 129, § 87.

In the application of these rules to the facts of a new case, previous decisions afford comparatively little assistance. It is always a question of the construction of the language used, which must be read and interpreted by the court as it would ordinarily

be understood by mankind. *Bloss* v. *Tobey*, 2 Pick. 328. *Carter* v. *Andrews*, 16 Pick. 5. *Snell* v. *Snow*, 13 Met. 278. *Lee* v *Kane*, 6 Gray, 495. *Barrows* v. *Bell*, 7 Gray, 310. *Solomon* v *Lawson*, 8 Q. B. 823.

The words set forth in the first and third counts, and in the second and fourth counts, of this declaration, are the same. In the first two they are alleged to be an accusation of the crime of embezzlement, and in the last two as a charge that the plaintiff has been guilty of the crime of receiving a bribe to influence his official conduct as collector of the port of Boston.

We are called upon to determine whether the following words fairly and reasonably impute to the plaintiff the crime of embezzlement, as alleged in the first count, or of receiving a bribe, as alleged in the third : " Goodrich had not accounted to the department for the sum paid by the Messrs. Williams by some thirty-two thousand dollars." These words do not import, and the prefatory averments of the declaration do not allege, that Mr. Goodrich ever received the money in question, or any part of it. If it was paid, not to him, but to some one else without his knowledge, the entire statement might be correct and accurate. Much less does this language assert or intimate that he had rendered any false account or made any wrongful appropriation or improper use of the money. The statute of the United States declares that a failure to pay over or produce the public money intrusted to certain officers shall be held and taken to be *prima facie* evidence of embezzlement. U. S. St. 1846, *c.* 90, § 16. But this must be a failure to pay on demand. *United States* v. *Forsythe*, 6 McLean, 584. There is nothing in this declaration to show that this money was ever demanded of Mr. Goodrich, or that it ever became his duty to account for it to the treasury department of the United States. The fair and natural meaning of the language amounts only to this, that the Messrs. Williams, in settlement of the claims against them, had paid to some one thirty-two thousand dollars more than Mr. Goodrich had accounted for to the government. Such a statement might excite inquiry as to who had received and what had been done with this sum of money, but

no ingenuity can torture it into a criminal accusation against the plaintiff.

The grounds for claiming this language to be a charge that he had received a bribe are still weaker. We are at a loss to perceive any plausible foundation for attributing to them such a meaning.

The other two counts are founded upon the following statement: " That, in the settlement of the alleged frauds of Messrs. J. D. & M. Williams, amounting to many hundreds of thousands of dollars, the amount paid by them was one hundred and fifty-seven thousand two hundred and twenty-four dollars; that only one hundred and twenty-five thousand two hundred and twenty-four dollars was accounted for, of which sixty-two thousand six hundred and twelve dollars was credited to the government, leaving the same amount, (sixty-two thousand six hundred and twelve dollars,) divided between the collector, the naval officer and the surveyor; that it was not known what had been done with the balance, amounting to the large sum of thirty-two thousand dollars, and it was understood that this settlement was made through the intervention of Mr. Samuel A. Way and his partner, the late deputy-collector; that it was discreditable to the government to have it generally known that the sum of one hundred and fifty-seven thousand two hundred and twenty-four dollars was paid by Messrs. Williams & Co. in a settlement with the government, and that thirty-two thousand dollars of that sum was not accounted for."

It seems entirely plain that this language does not charge that the sum of thirty-two thousand dollars in question, or any part of it, ever came into the plaintiff's hands. It is expressly stated that it is not known what became of it, and the fact that it has not been accounted for is spoken of as discreditable to the government. No part of the assertion appears to have been an imputation directed against the plaintiff or any other individual. " When the words are not in themselves applicable to the plaintiff, no introductory averment or innuendo can give such an application." *Solomon* v. *Lawson, ubi supra.* This language, like that in the former counts, was calculated to induce an

investigation into the disposition made of the thirty-two thou sand dollars unaccounted for, and such an investigation might probably include the plaintiff in consequence of his official position. But it does not amount to an express or implied accusation of any criminal offence committed by him.

The court are all of the opinion that there is nothing in the words set forth in any of the counts, which, in connection with the extrinsic facts alleged, warrants the construction claimed by the plaintiff. The language is not capable of the interpretation given to it by the innuendoes. It does not amount to a charge of crime by the defendant against the plaintiff, and the demurrer to the whole declaration is sustained.